Nathan P. Roberts, WSBA No. 40457
Jackson R. Pahlke, WSBA No. 52812
Connelly Law Offices, PLLC
2301 N. 30th Street
Tacoma, WA 98403
Ph: (253) 593-5100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Estate of JOSEPH ALEXANDER VERVILLE, deceased, by and through Joshua Brothers as a Personal Representative,  ABIGAIL SNYDER, individually, and JAN VERVILLE, individually, <br><br> Plaintiffs, <br><br> v. <br><br> CHELAN COUNTY, Washington, a municipal corporation d/b/a CHELAN COUNTY REGIONAL JUSTICE CENTER; CHRISTOPHER SHARP; and KAMI ALDRICH, L.P.N. <br><br> Defendant. | NO.  2:24-cv-00010-MKD <br><br> **SECOND AMENDED COMPLAINT** |

Plaintiffs, by and through their attorneys of record, alleges as follows:

## I.    INTRODUCTION

1.    Jails have a responsibility to provide competent medical treatment to those in their care.  Failure to do so places lives at risk and needlessly exposes jailed individuals to dying alone in pain and confusion, and families to unimaginable grief.

2.    Defendant Chelan County Regional Justice Center ("Chelan County Jail") accepted Joseph Verville into its jail on September 5, 2021.  At jail, Joseph was

suffering from withdrawal.  On his booking intake form, he told his jailers he would be withdrawing which required the Jail assess and place him on the withdrawal protocol at that time.  He wasn't placed on the protocol until over 24 hours later, and the protocol wasn't performed correctly.   He was seen once by an L.P.N. for less than two minutes.  Joseph's medical needs were not addressed, and his withdrawal turned fatal as he vomited and vomited until he died.  Joseph's death was preventable had the jail provided the constitutional minimum of medical care.

3.    This is an action under 42 U.S.C. § 1983 and Washington negligence law from the events and circumstances leading up to, surrounding, and causing the wrongful death of Joseph Verville.  This lawsuit is brought by the P.R. of Joseph's Estate on behalf of and for the benefit of his estate and beneficiaries, and by his mother and father, Abigail Smith and Jan Verville, for the loss of their son.

## II.    PARTIES

4.    **Plaintiff** Estate of Joseph Verville by and through its duly appointed Personal Representative, attorney Joshua L. Brothers who resides in King County, brings all claims on behalf of the Estate for the Estate's actual and statutory beneficiaries.

5.    **Plaintiff Abigail Snyder** is the mother of Jospeh Verville.  She brings all claims available to her, including under RCW 4.24.010 and RCW 4.20.010 et seq.

SECOND AMENDED COMPLAINT - 2 of 27

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

6.     **Plaintiff Jan Verville** is the father of Joseph Verville.  He brings all §1983 claims available to him, including under RCW 4.24.010 and  state law tort claims.

7.     **Defendant Chelan County** is a municipality within the State of Washington. Chelan County maintains and operates the Chelan County Regional Justice Center ("Chelan County Jail"), which is a municipal agency.  The Chelan County Regional Justice Center is a correctional facility located in Wenatchee that houses and confines both pre-trial detainees and convicted prisoners.  The jail is a 267 bed facility that services a population of 100,000 people and encompasses a geographical area of over 5,000 square miles.  All pre-trial detainees confined at the Chelan County Regional Justice Center are entitled to constitutional protections under the Fourteenth Amendment to the United States Constitution, including constitutionally adequate medical care and humane conditions of confinement in addition to state law protections. Chelan County is legally liable for the constitutional violations and negligent acts of its employees at the Chelan County Regional Justice Center in addition to the County's own unconstitutional customs, policies, practices, and state law negligence.

8.     The civil rights violations delineated in this Complaint were proximately caused by Chelan County's customs, policies, practices, ratification of misconduct, and usages.

SECOND AMENDED COMPLAINT - 3 of 27

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

9.      Defendant Chelan County was at all material times a "health care provider" under RCW 7.70.020(3) in that it was an entity employing persons licensed by the State of Washington to provide health care services, including nurses and others as listed in RCW 7.70.020(1).

10.     **Defendant Christopher Sharp** was at all times relevant to this case the Regional Justice Center Director and Chief, and employee of Defendant Chelan County who was acting in the course and scope of his employment and under the color of state law. Director Chief Sharp was responsible for setting, modifying, supervising, and training Chelan County jail policies, practices, procedures, and customs. Director Chief Sharp was responsible for ensuring the presence of, and implementing constitutionally sufficient and reasonable policies, procedures, and training for the Chelan County Jail, including, ensuring that healthcare provided to inmates and detainees at the jail, including Joseph, met the requirements of the United States Constitution and other legal standards. Defendant Sharp, as the Director of the Jail, was also responsible for taking care that his subordinates, including medical staff, provided the constitutionally required minimum level of medical care to inmates. Defendant Sharp is sued in his official and individual capacity.

11.     **Defendant Kami Aldrich** was at all times relevant to this case a Licensed Practical Nurse ("L.P.N.") and employee of Defendant Chelan County working at the Chelan County Regional Justice Center who was acting in the course

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

and scope of her County employment.  At all material times, Defendant Aldrich was acting under the color of state law in providing healthcare to Chelan County inmates and detainees.  She had the duty to ensure that healthcare provided to inmates and detainees at the jail, including Joseph, met the requirements of the United States Constitution and other legal standards.  Defendant Aldrich is sued in her individual capacity.

12.    Defendant Aldrich was at all material times a "health care provider" under RCW 7.70.020(1) in that she was a Licensed Practical Nurse licensed by the State of Washington.

## II.    JURISDICTION & VENUE

13.    This Court has personal and subject matter jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. All actions and omissions alleged in this Complaint were committed by the Defendants in the State of Washington and in this judicial district.  Each Defendant either resided in Washington, resides here now, or did systematic and continuous business in Washington.

14.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Eastern District of Washington.

SECOND AMENDED COMPLAINT - 5 of 27

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

### III.    STATEMENT OF FACTS

**A. Jail Responsibilities Overview**

15.    Washington jails, including Chelan County Jail, have a constitutional and state law duty to provide reasonable care to those in their jail.  Despite this, many inmates receive little to no medical care and die:

- "The number of deaths in local jails due to drug or alcohol intoxication has more than quadrupled between 2000 (37) and 2018 (178)." The Bureau of Justice Statistics, *Mortality in Local Jails, 2000-2018 – Statistical Tables* (April 2021), p. 1, https://bjs.ojp.gov/content/pub/pdf/mlj0018st.pdf

- "About 40% of inmate deaths in 2018 occurred within the first 7 days of admission to jail, while an additional 15% of deaths occurred among inmates serving 6 months or more." *Id.*, 1.

- "Millions of people are booked into jails each year with alcohol or drug use disorders, and the number who died of reported intoxication while locked up reached record highs in 2018. Since 2000, these deaths are up 381 percent, and over the entire 18 years of data collection, the median time served before a drug or alcohol intoxication death was just 1 day." *Rise in jail deaths is especially troubling as jail populations become more rural and more female*, Prison Policy Initiative (June 23, 2021), https://www.prisonpolicy.org/blog/2021/06/23/jail_mortality/

16.    Intoxication and withdrawal are medical conditions that jails have a duty to treat reasonably and promptly.  Failure to do so places inmates in grave danger.

17.    It is well known by jails and jail healthcare staff, like Defendants here, that withdrawal is a severe medical condition that requires prompt competent medical treatment, and failure to properly provide such treatment places an individual in danger of catastrophic injury or death:

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

- "Opioid withdrawal syndrome is a life-threatening condition resulting from opioid dependence" Shah M, Huecker MR. *Opioid Withdrawal*, StatPearls (January 17, 2023), https://www.ncbi.nlm.nih.gov/books/NBK526012/.

- "Death is an uncommon, but catastrophic, outcome of opioid withdrawal … Persistent vomiting and diarrhea may result, if untreated, in dehydration, hypernatremia (elevated blood sodium level) and resultant heart failure … All such deaths are preventable, given appropriate medical management." Shane Darke, Sarah Larney, Michael Farrell, *Yes, People Can Die from Opiate Withdrawal*, Addiction (August 2016), p. 199–200, https://doi.org/10.1111/add.13512

18.     Defendant Chelan County and its employees have a duty to reasonably ensure the safety of those confined in its jail, especially those who are undergoing health complications.

19.     Defendants have a duty to refrain from depriving inmates, such as Joseph, of their constitutional rights.

20.     Defendants owe a duty to have and follow reasonable policies, procedures, and protocols which should be designed to provide reasonable and constitutionally sufficient medical care to inmates.

21.     Defendant Chelan County and Defendant Director Sharp also owe a duty to properly train and supervise its jail employees on policies, procedures, and protocols to encourage consistent enforcement of policies and procedures to provide reasonable and constitutionally sufficient medical care to inmates.

22.     This case arises from the Defendants' breach of those duties, and their failure to provide minimal and lifesaving healthcare to Joseph who died as a result.

SECOND AMENDED COMPLAINT - 7 of 27

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**B. Joseph's Death at the Chelan County Jail**

23.     38-year-old Joseph Verville died an entirely preventable death on September 7, 2021, at the Chelan County Jail.

24.     At the time of Joseph's death, Defendants should have been aware that inmates were not receiving the constitutional minimum of healthcare and exposed to the risk of suffering severe injury or death as a result.  Even after Joseph's death, Defendants failed to address and correct their dangerous medical practices at the jail. Defendants' actions show deliberately indifference to Joseph's right to medical care and foreseeably resulted in his preventable death.

25.     On **September 5, 2021**, at approximately 3:39 P.M., Joseph Verville is booked into the Chelan County Jail as a pre-trial detainee. Joseph's backpack contains drug paraphernalia. The booking officer confirms that Joseph appears to be under the influence of drugs or alcohol and Joseph tells the officer he is having signs of withdrawal and admits to using both heroin and other opioids.  Joseph informs the officer he would be interested in an opioid treatment program:

SECOND AMENDED COMPLAINT - 8 of 27

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

**BOOKING OFFICER VISUAL OPINION**

(Please circle appropriate information within each question, if applicable)                                    YES    NO

1. Are there signs of trauma or open draining wounds (bleeding, pain, swelling, or other symptoms)? _____    __    X
2. Is there obvious fever, swollen lymph nodes, jaundice, or other evidence of infection which might spread throughout the jail?  If yes, please describe:_____    __    X
3. Is the skin in good condition and appear to be free of vermin?    __    X
4. Does behavior suggest immediate mental health care?    __    X
5. Does subject appear to be under the influence of drugs, alcohol, or both?    X    __
6. Are there any signs of withdrawal?    _States yes_    X    __

**INMATE QUESTIONS**

                                                                                                YES/SI    NO

1. Are you currently taking any medications?  If yes, please describe:_____    __    X
   ¿Está tomando algún medicamento? En caso afirmativo, por favor describa.
2. Do you have any other medical problems that we need to know about?    __    X
   ¿Tiene algún otro problema médico que necesitemos conocer?
3. Are you currently using Heroin or any other opiods?    _Both_    X    __
   ¿Actualmente utilize heroina u otros opiáceos?
4. Would you be interested in a opioid treatment program?    X    __
   ¿Estaría interesado en un programa de tratamiento de opiáceos?

26.    Defendants know that untreated or undertreated intoxication and/or withdrawal exposes inmates to grave risk and death.  The Chelan County Jail has Lexipol Policy 717 and a Medical Protocol which they are required to follow.

27.    Lexipol Policy 717 states that withdrawal can be life threatening and that the County must provide proper medical care promptly:

## Detoxification and Withdrawal

**717.1  PURPOSE AND SCOPE**
Significant percentages of inmates have a history of alcohol and/or drug abuse. Newly incarcerated individuals may enter the facility while under the influence of a substance or they may develop symptoms of alcohol or drug withdrawal. This policy is intended to ensure that the staff is able to recognize the symptoms of intoxication and withdrawal from alcohol or drugs, and that those inmates who are intoxicated or experiencing withdrawal are provided appropriate medical treatment.

This policy also identifies protocols to be used by qualified health care professionals. These protocols are appropriate for inmates who are under the influence of alcohol or drugs or who are experiencing withdrawal from any type of substance abuse.

**717.2  POLICY**
Withdrawal from alcohol or drugs can be a life-threatening medical condition requiring professional medical intervention. It is the policy of this department to provide proper medical care to inmates who suffer from drug or alcohol overdose or withdrawal.

To lessen the risk of a life-threatening medical emergency and to promote the safety and security of all persons in the facility, staff shall respond promptly to medical symptoms presented by inmates.

The Health Care Authority shall develop written medical protocols on detoxification symptoms necessitating immediate transfer of the inmate to a hospital or other medical facility, and procedures to follow if care within the facility should be undertaken.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

28.     The Chelan County Withdrawal protocol requires the Wilcox Opiate Withdrawal Scores (WOWS) and a toxicology urinalysis be performed **when** an inmate reports a history of opiate use, past withdrawal, or is identified by staff as having potential for opiate withdrawal.  If the WOWS score is greater than 7, Buprenorphine is given, and a provider contacted:

27. Opiate Withdrawal-MAT

1.  Initiate the Wilcox Opiate Withdrawal Score (WOWS) when an inmate reports a history of opiate use, past withdrawal or is identified by staff as having potential for opiate withdrawal by means of reported history of opiate use, past history of withdrawal or if the inmate has a high index of suspicion for potential for withdrawal. A Tox UA will be done as part of the WOWS initiation to confirm recent opioid or other drug use.

2.  Medications below may be initiated for any inmate with potential for opiate withdrawal if symptoms are present.
    WOWS assessment will be performed daily for a minimum of 5 days or until no longer showing symptoms

    Offer the following:

    A.  Phenergan 25 mg po TID x 3 days then BID x 2 days
    B.  Lomotil (Imodium) 2 mg po BID x 5 days
    C.  Unlimited access to electrolyte replacement drink in cell with a goal of 8 oz intake per hour for 5 days. Inmate should be cautioned to avoid intake of free water.

    D.  Zofran 4 mg po ODT every 8 hours as needed for nausea/vomiting instead of Phenergan if indicated.
    E.  Ibuprofen 600 mg bid x 7 days

    F.  WOWS score >7 patient meets criteria for buprenorphine initiation. Buprenorphine 4mg under tongue twice a day for 2 days or as prescribed. Contact provider.

29.     After booking, Joseph is not given the WOWS or a urinalysis.  He is taken to a cell and left alone without medical care.

30.     Joseph is housed in cell H2 originally.  At approximately 4:52 P.M. he is moved to 2B Room #1.  No medical care is provided.

31.     On **September 6, 2021**, Joseph's medical condition worsens.

32.     At 4:47 AM, Joseph sits up in bed and vomits on a white towel.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

33.     Jail deputies serve breakfast at 5:24 AM, and three cell checks are performed at 6:20 AM, 7:26 AM, and 8:42 AM.  At the 6:20 AM cell check, the door opened briefly for a 3 second encounter, the 7:26 and 8:42 AM cell checks are done by briefly looking into his cell window.

34.     At 9:51 AM, Joseph vomits several times into the toilet.

35.     Jail deputies look in Joseph's cell window at 9:55 AM for seconds and then leave.

36.     Jail deputies look in Joseph's cell window for seconds at 11:05 AM.

37.     At 12:26 PM, lunch is served.  It is left at the food port in Joseph's cell—Joseph doesn't take his lunch and it is picked up.

38.     Jail deputies look in Joseph's cell window for seconds at 1:26 PM.

39.     At 2:01 PM, Jospeh vomits into the toilet.

40.     Jail deputies look in Joseph's cell window for seconds at 2:18 PM.

41.      At 4:50 PM, Joseph is seen for the first time by medical staff member Defendant L.P.N. Aldrich.   The encounter lasts approximately 1 minute and 20 seconds.

42.     In the 1 minute and 20 second medical encounter, Defendant L.P.N. Aldrich takes Joseph's heart rate and blood pressure. His recorded heart rate is 121 B.P.M and his recorded blood pressure is 156 mm Hg (systolic) over 122 mm Hg (diastolic).  Before taking his blood pressure, Jospeh was laying bed.  Joseph's heart

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

rate of 121 B.P.M. fell outside of the American Heart Association's normal limits, which is normally between 60 B.P.M. and 100 B.P.M.  His blood pressure is high.

43.    According to the American Heart Association, systolic blood pressure above 140 mm Hg is considered "high blood pressure (hypertension) state 2 and diastolic blood pressure above 120 mm Hg is considered "hypertensive crisis (consult your doctor immediately)."  Joseph's 122 mm Hg diastolic blood pressure is over the threshold for "<u>HYPERTENSIVE CRISIS</u> (consult your doctor immediately)":



44.    No doctor is contacted.

45.    Defendant L.P.N. Aldrich also performs the WOWS to assess the severity of Joseph's withdrawal symptoms and obtains a score of nine, but incorrectly writes done a score of 8.  A WOWS score above 7 requires Buprenorphine to be given and to "[c]ontact provider." *See* ¶28.  Neither is done.

46.    Instead, L.P.N. Aldrich has Jail deputies bring Joseph one dose of 25 mg Promethazine with Gatorade for dinner at 5:08 PM.  Joseph doesn't eat the food on his dinner tray.  His fluid intake is not monitored.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

47.     No medical staff sees Joseph alive again.

48.     At 6:30 PM, 7:36 PM, 8:47 PM, 9:36 PM, 10:38 PM Jail deputies conduct brief cell checks by looking into Joseph's cell window for a few seconds before leaving.

49.     At 10:42 PM, Joseph vomits in the toilet.

50.     A jail deputy enters Joseph's cell at 11:35 PM for 12 seconds while another deputy stands at the doorway, and then they leave.

51.     **On September 7, 2021**, Joseph's health continues to worsen, and he dies unnoticed by the Jail.

52.     Jail deputies conduct brief cell checks on Joseph by briefly looking into his cell window at 12:40 AM and 1:37 AM.

53.     At 1:58 AM, Joseph vomits on a white rag on the cell floor near his bed.  He then vomits into the toilet.

54.     Jail deputies look in Joseph's cell window briefly at 2:35 AM and 3:39 AM.

55.     At 3:44 AM, Joseph vomits on the floor near his bed multiple times.

56.     At 3:47 AM, Jospeh vomits at the toilet.

57.     Jail deputies look in Joseph's cell window briefly at 4:36 AM.

58.     At 4:46 AM, Joseph sits up in bed and vomits.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

59.     In reviewing the video of Joseph's cell after his death, the Chelan County Jail and North Central Washington Special Investigation Unit determine that Joseph's last movement seen on video is at approximately 5:08 AM.

60.     At 5:32 AM during breakfast, a Jail deputy reports Joseph moaned after breakfast was delivered.  Joseph never got up to get the breakfast. He isn't checked on to see if he is in distress or why he is moaning.

61.     Jail deputies look in Joseph's cell window briefly at 7:40 AM.

62.     At 8:53 AM, Jail deputies accompany Defendant L.P.N. Aldrich for medication delivery.  A jail deputy tries to get Joseph's attention outside the cell door, fails to, then stands by Joseph's bed for 5 seconds before leaving.  There is visible vomit in multiple locations in the cell.  L.P.N. Aldrich leaves before the jail deputy entered Joseph's cell and doesn't check on Joseph.  No medical treatment is provided.

63.     At 9:31, Jail deputies enter Joseph's cell after being unable to get his attention over the intercom so he could appear for his court appearance.  They can't. He is dead.  CPR is started.   Joseph is pronounced dead at 9:45 AM and a white sheet is placed over his body.

64.     Any reasonable L.P.N. would have appreciated from the above information that Joseph is suffering from a serious and potentially life-threatening medical emergency and that Joseph was at a high degree of risk of death or serious complications without prompt medical care, evaluation, and treatment by an

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

appropriate provider. Particularly given that further diagnosis was not within her scope of licensure as a Licensed Practical Nurse, Defendant L.P.N. Aldrich should have taken steps to secure immediate medical care for Joseph from a higher level provider. The available options included ordering Joseph transferred to the E.R. of a nearby hospital, calling a physician or other higher level provider with the skill, experience, and knowledge to see and evaluate Joseph, or at bare minimum, seeking the immediate advice of a medical doctor or other higher level provider. Defendant L.P.N. Aldrich also failed to follow the Withdrawal Protocol. Defendant L.P.N. Aldrich was required to take prompt and appropriate action to ensure Joseph received the care he desperately needed.

65.    Defendant L.P.N. Aldrich took none of the above steps and took no other action reasonably necessary to reduce the risk of serious injury or death to Joseph.

66.    Instead of medical care, Joseph received brief and deficient cell checks by jail guards which fail to see if he okay or in worse distress. These aren't medical checks. Pursuant to the usual customs, practices, procedures, and policies of the Chelan County Jail, Joseph's "monitoring" during his severe and deteriorating medical condition is done by the periodic "watch" of jail guards who have no training or expertise in monitoring, evaluating, or caring for seriously ill inmates nor are the guards informed whether and what an inmate's medical condition is nor what to watch

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

for.  These events are called "cell checks" where a jail guard walks to the door of an inmate and looks in to see if they are ok for a few seconds.  These cell checks are done too quickly and without checking to see if the inmate is okay, breathing, and not dying or dead.  The substandard cell checks failed to notice the vomit across Joseph's room as his medical condition deteriorated.

67.    The cell checks by corrections officers are grossly insufficient to evaluate whether Joseph is in stable medical condition or not.  These guards are not medically licensed, trained, and lack the qualifications, schooling, skill, or experience to evaluate medical conditions—much less by "eyeballing" an inmate for a few seconds from a distance.  These cell checks are not designed to and are unable to take vital signs, evaluate symptoms, make medical diagnoses or evaluations, ask medically-oriented questions, or otherwise engage in any kind of actual medical evaluation.  Predictably, these cell checks provide no medical aid to Joseph or medical data to medical staff.

68.    Similarly, when Defendant L.P.N. Aldrich returns to Joseph's cell on September 7, 2021, at approximately 8:53 A.M. for medication delivery and sees Joseph lying prone and unresponsive on the bed, she does not enter the cell or inquire why there is so much vomit in the cell.  Defendant L.P.N. Aldrich walks away, disregarding Joseph's health.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

69.     The Chelan County Jail is insufficiently equipped to handle anywhere in its facility the needs of inmate-patients suffering from urgent, emergent, acute, or potentially life-threatening medical conditions.

70.     After Defendants were confronted with clear signs of medical distress, Joseph was given a pill and no other medical care despite his increased vomiting and worsening condition.

71.     Joseph died from his unmanaged and grossly undertreated severe medical condition, which Defendants let deteriorate until he died.

72.     Joseph's death was the foreseeable result of the negligence and deliberate indifference to Joseph's serious medical needs by Defendants alleged in this Complaint.

73.     Defendant Aldrich acted with deliberate indifference to Joseph's serious medical needs.  She made intentional decisions regarding Joseph's care that subjected him to a substantial risk of suffering serious harm and death.  She failed to take available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved (making the consequences of her conduct obvious), thereby causing Joseph's suffering and death.

74.     Defendant Aldrich acted with reckless disregard for Joseph's constitutional rights.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

75.     Defendant Aldrich caused the continued suffering and death of Joseph by failing to follow the accepted standards of care.

76.     Defendants' actions were grossly negligent, deliberately indifferent, and with reckless disregard to Joseph's constitutional right to medical care and life.

77.     Defendant Chelan County caused the continued suffering and death of Joseph by failing to follow the accepted standards of care.

78.     Defendant Chelan County and Defendant Director Sharp created and / or maintained constitutionally deficient policies, practices, or customs that subjected jail inmates and detainees like Joseph to a substantial risk of serious harm and that were a moving force in causing the harms alleged in this lawsuit. These included, but were not limited to:  (1) a practice, policy, or custom of not properly caring for or medically monitoring acutely ill inmates; (2) a practice, policy, or custom of not medically monitoring inmates who are withdrawing from opiates, alcohol, or other substances;  (3) a practice, policy, or custom of having its L.P.N.s place acutely ill inmates on "medical watch," when, in fact, such inmates were only looked at periodically by jail's guards who lacked the qualifications, training, skill, licensure, schooling or experience to evaluate inmates' medical conditions; (4) a practice, policy, or custom of having its L.P.N.s make medical diagnoses and treatment decisions beyond their scope of practice; (5) a practice, policy, or custom of having acutely ill inmates health needs deficiently monitored by jail guards who lacked the

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

qualifications, training, skill, licensure, schooling or experience to evaluate inmates' medical conditions instead of properly trained and licensed medical staff; (6) deficient customs, practices, policies, and procedures for recognizing and responding appropriately to jail inmates' and detainees' urgent medical needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care instead of remaining in the jail where higher level care was not feasible; (7) a policy, practice, or custom of allowing jail inmates with serious health needs to go untreated or to receive treatment that was so inadequate as to be below the standard of care and constitutionally infirm; and (8) a policy, practice or custom of failing to ensure that nurses adequately fulfilled their gatekeeper roles by communicating inmates' and detainees' acute medical needs to higher level providers and otherwise taking action to ensure that such individuals were adequately evaluated and treated by medical professionals with the skill, training, experience, and licensure to do so.

79.     Defendant Chelan County and Defendant Director Sharp failed to adequately train and/or supervise its personnel in providing constitutionally adequate care to jail inmates and detainees. This includes inadequate training and supervision regarding (1) recognizing and responding appropriately to jail inmates' and detainees' serious medical needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care

SECOND AMENDED COMPLAINT - 19 of 27

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

instead of remaining in the jail where higher level care was not feasible and where inmates and detainees were therefore unfit to remain confined, (2) communicating with other healthcare providers regarding serious inmate-patient needs, (3) communicating with jail staff regarding serious inmate-patient needs and ensuring that inmates with serious illnesses were evaluated and treated in a manner that would not cause their condition to deteriorate, and (4) ensuring compliance with the duty to provide inmates and detainees with constitutionally adequate healthcare.

80.     The constitutional deficiencies outlined above led to two deaths in a short time span at the Chelan County jail since 2021.  Joseph died on September 7, 2021, and Blair Nelson on November 21, 2021.  Both deaths were preventable and resulted from unconscionable delays in medical care.

81.     Chelan County has a pattern of failing to secure medical care for inmates with obviously serious medical conditions. Joseph and Blair Nelson's deaths are symptoms of these constitutional failures.

82.     Chelan County's failure to secure medical care for inmates with serious medical needs was driven, in part, by constitutionally impermissible financial considerations.  Chelan County Jail is obligated to pay for some portion of inmates' medications and off-site services, such as hospital visits and ambulance runs.

83.     All acts and omissions of Chelan County and its employees and agents were done under color of state law and committed with at least reckless disregard for

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

Joseph's rights under the Fourteenth Amendment. Defendants' acts and omissions caused Joseph to suffer significant pre-death pain and suffering during his confinement and caused his death.

84.    Under the non-delegable duty doctrine and vicarious liability, the unconstitutional acts and omissions of Defendant Director Sharp, Defendant L.P.N. Aldrich, and Chelan County's staff and agents are imputed to and become those of Chelan County.

85.    Defendant Director Sharp is liable in his supervisor capacity for the acts of his subordinates, including L.P.N. Aldrich, by setting in motion the acts of others, and / or knowingly refusing to terminate series of actions by subordinates in failing to reasonably care for withdrawing or severely ill inmates, medically monitor withdrawing or severely ill inmates, contact a higher level medical provider, or transfer severely ill patients to a facility with a higher level of care which Defendant Sharp knew or reasonably should have known would result in Chelan County Jail employees inflicting harm to inmates, like Joseph, and their rights to constitutional medical care resulting in serious grave injury or death.

86.    In addition, Defendants are liable in negligence for unreasonably countenancing, approving and participating in the practice of allowing the jail's guards, who were not medically licensed or trained and lacked the qualifications, training, skill or experience to evaluate inmates' medical conditions or otherwise

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

engage in any kind of actual medical evaluation, to monitor inmates with serious medical needs.

### IV.    STATUTORY COMPLIANCE[1]

87.    More than sixty days prior to the commencement of this suit, Plaintiffs served an administrative claim for damages on Defendant Chelan County.

88.    Any prerequisites to the maintenance of this action imposed by RCW 4.96 have therefore been satisfied.

## V.    FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 – ALL DEFENDANTS

89.    As a result of the conduct alleged in this Complaint, Defendant Chelan County is liable under 42 U.S.C. § 1983 for violating Joseph's rights under the Fourteenth Amendment to the United States Constitution by denying his constitutionally required medical care and treatment and subjecting him to inhumane conditions of confinement.

90.    As a result of the conduct alleged in this Complaint, Defendant Director Sharp is liable under 42 U.S.C. § 1983 for violating Joseph's rights under the Fourteenth Amendment to the United States Constitution by denying Joseph constitutionally required medical care and treatment and subjecting him to inhumane conditions of confinement.

[1]

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

91.    As a result of the conduct alleged in this Complaint, Defendant Aldrich is liable under 42 U.S.C § 1983 for violating Joseph's rights under the Fourteenth Amendment to the United States Constitution by denying him constitutionally required medical care and treatment and subjecting him to inhumane conditions of confinement.

92.    As a direct and proximate result of Defendant Chelan County, Director Sharp, and L.P.N. Aldrich's unconstitutional acts and omissions, Joseph suffered extreme physical pain, severe mental and emotional anguish, humiliation, and lost his life.  And Joseph's beneficiaries lost his society and companionship.  These claims, actionable through Joseph's Estate are asserted by and through the Estate's P.R. Joseph's mother and father both separately suffered loss of love and companionship of Joseph, loss of Joseph's emotional support, and destruction of the parent-child relationship.

## VI.    SECOND CAUSE OF ACTION – NEGLIGENCE – ALL DEFENDANTS

93.    Defendants Chelan County, Director Sharp, and L.P.N. Aldrich had a duty to provide reasonable medical care to Joseph.  They also have a duty of reasonable care to not harm Joseph.

94.    Defendants breached this duty by and among other ways to be proven at trial and uncovered in discovery, by failing to meet the standard of care; failing to

SECOND AMENDED COMPLAINT - 23 of 27

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

properly hire, train, instruct and supervise its agents, ostensible agents, staff and/or physicians and medical personnel; failing to create, implement, and/or enforce proper policies and procedures; preventing Joseph from receiving the medical care he needed; failing to promptly treat Joseph's medical condition; failing to promptly send Joseph to a higher level of care at the jail if available or to a hospital to manage his severe medical condition; keeping Joseph at the jail without any medical follow up until he died; failing to provide a plan of medical care; failing to reasonably evaluate and treat Joseph's acute medical needs; evaluating Joseph for less than two minutes with only an L.P.N.; monitoring Joseph's condition via jail guard cell checks after Joseph was given withdrawal medication by Defendant L.P.N. Aldrich; and failing to conduct reasonable cell checks to see if Joseph was alive and well or needed medical treatment.

95.     As a result of the conduct alleged in this complaint, Defendants are liable under negligence and RCW 7.70 et seq. for proximately causing pain, suffering, and death to Joseph by failing to follow the accepted standards of care. As a direct and proximate result of these Defendants' failures to follow the accepted standards of care, Joseph suffered extreme physical pain, severe mental, emotional anguish, humiliation, and death. These claims, actionable through Joseph's Estate, are asserted on his behalf by and through the Estate's P.R. and for the benefit of his beneficiaries, under Washington's wrongful death and survival statutes, RCW 4.20.010-20, RCW 4.20.046, and RCW 4.20.060. Joseph's mother and father suffered loss of love and

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

companionship of Joseph, loss of the Joseph's emotional support, and destruction of the parent-child relationship pursuant to RCW 4.24.010.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a judgment against Defendants, as follows:

1.      All compensatory general and special damages authorized by law to the Estate of Joseph Verville, his beneficiaries, Abigail Smith, and Jan Verville, including but not limited to all available damages for Joseph's mental, physical, and emotional pain and suffering leading up to his death and the loss of the value and enjoyment of his life;

2.      All compensatory general and special damages authorized by law to Plaintiffs for the loss of Joseph, pursuant the Washington's wrongful death and survival statutes;

3.      For punitive damages on Plaintiffs' claims under 42 U.S.C. § 1983 against Defendants Chelan County, Director Sharp, and Aldrich;

4.      For costs, including reasonable attorneys' fees and costs, under 42 U.S.C. § 1988 and RCW 42.56.550(4), and to the extent otherwise permitted by law; and

5.      For such other relief as may be just and equitable.

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

## VII.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Washington Constitution Article 1, § 21, Plaintiff hereby demands a jury for all issues so triable.

DATED this 1st day of May 2024.

CONNELLY LAW OFFICES, PLLC

By_____
Nathan P. Roberts, WSBA No. 40457
Jackson R. Pahlke, WSBA No. 52812
2301 North 30th Street
Tacoma, WA 98403
Phone: (253) 593-5100
Fax: (253) 593-0380
E-mail: nroberts@connelly-law.com
jpahlke@connelly-law.com
*Attorneys for Plaintiffs*

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. If service is on a non-registered user of the CM/ECF system, I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

3

4

5

**Attorneys for Defendants Chelan County, Kami Aldrich, and Christopher Sharp**

6

Patrick McMahon, WSBA No. 18809
Attorneys for Defendants
Carlson & McMahon, PLLC
715 Washington St. PO Box 2965, Wenatchee, WA 98807-2965
(509) 662-6131
(509) 663-0679-Fax
patm@carlson-mcmahon.org

7

8

9

CONNELLY LAW OFFICES, PLLC

10

11

12

By_____
Kirstyn Kono, Paralegal

13

14

15

16

17

18

19

20

21

22

23

SECOND AMENDED COMPLAINT - 27 of 27

**CONNELLY LAW OFFICES, PLLC**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax